OPINION
{¶ 1} The defendant-appellant, Lance E. Grimes ("Lance"), appeals the June 9, 2005, Judgment of conviction and sentence entered in the Court of Common Pleas, Union County, Ohio.
 {¶ 2} On or about February 16, 2005, Logan Fischer ("Logan") and Robert Miller ("Robert"), both fifteen years old, did not attend school, but went to visit a friend, Michelle. In order to get to Michelle's, Lance and Chris Taylor ("Chris") picked up the boys and took them back to Michelle's. When they arrived, the two boys purchased half of an eighth of marijuana from Chris and sat on the couch smoking marijuana and eating noodles while Chris and Lance played poker in the kitchen.
 {¶ 3} A little while later, Lance, Chris, Logan, Robert, and Michelle left Michelle's house to take Logan and Robert to the Mudgett's residence. On the way, Logan and Robert observed a gun on the lap of Lance who was sitting in the front passenger seat of the car. They described the gun as black and gray, about nine to eleven inches long, and having clips. They also stated that there was a silver gun case located in the car. When driving to the next location, Chris stopped at a Marathon station to purchase Logan and Robert some cigarettes. Both Chris and Lance went into the Marathon station. Logan and Robert observed that Lance had taken the gun with him. Chris and Lance returned from purchasing the cigarettes and proceeded to the Mudgett's residence.
 {¶ 4} Upon arriving at the Mudgett's house, Chris let Logan and Robert out of the back seat of the car. The boys then started toward the house; however, Lance called the boys back. Logan returned to the car first and was questioned by Lance as to whether either he or Robert had stolen the water bong that they had used earlier in the day to smoke the marijuana. During this time, Lance had the gun pointed at Logan, making Logan feel as though he was not free to leave. Then, Lance patted Logan down and didn't find the water bong but took his money. Next, Lance called Robert over and told him to empty his pockets and patted him down. During this time period, Lance had a gun in his hand pointed at Robert. Robert was jerking around and Lance told him if he jerked again he was going to shoot him. Robert was afraid that Lance was going to shoot him; thus, making him feel that he was not free to leave. Lance then took Robert's money and marijuana. In addition, Lance threatened Logan and Robert by saying if they snitched he was going to shoot them. Finally, Chris, Lance and Michelle left the Mudgett's residence.
 {¶ 5} Later that evening, Logan and Robert were apprehended by law enforcement officers. Robert provided the law enforcement officers with a statement explaining the events that occurred on February 16, 2005. The following day in Juvenile Court, Logan disclosed to law enforcement officers what happened on February 16, 2005.
 {¶ 6} Pursuant to these allegations, Lance was indicted on March 4, 2005 with one count of Kidnapping in violation of R.C.2905.01(A)(2), a felony of the second degree; one count of Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree; and two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree with a firearm specification on each count. On May 3, 2005, at the conclusion of the two day jury trial, the jury found Lance guilty of one count of Abduction and two counts of Aggravated Robbery with a firearm specification on each count. On June 9, 2005, the Judgment of conviction and sentence was filed sentencing Lance to a mandatory term of three years in prison on each of the firearm specifications, concurrent to one another, and a term of three years on each of the aggravated robbery counts, to be served concurrent to one another and consecutive to the firearm specification sentence, and a term of one year on the count of abduction, to be served concurrent with the aggravated robbery counts and consecutive to the firearm specification sentence for a total sentence of six years.
 {¶ 7} On June 24, 2005, Lance filed his notice of appeal raising the following assignments of error:
 Assignment of Error 1 THE GUILTY FINDINGS BY THE JURY WERE AGAINST THE MANIFESTWEIGHT OF THE EVIDENCE (AND THERE WERE DEFICIENT CHARGINGDOCUMENTS).
 Assignment of Error 2 APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AND WASTHUS DEPRIVED OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW.
 Assignment of Error 3 BY SENTENCING THE DEFENDANT TO THREE YEARS FOR EACH FIREARMSPECIFICATION RETURNED BY THE VERDICT (sic), THE COURT VIOLATEDTHE DEFENDANTS (sic) RIGHT TO JURY TRIAL AND DEFENDANT'S DUEPROCESS RIGHTS AND MADE OTHER SENTENCING ERRORS.
 {¶ 8} In Grimes' first assignment of error, he asserts that the jury verdict was against the manifest weight of the evidence. Grimes was convicted of one count of Abduction and two counts of Aggravated Robbery; all with a three year firearm specification.
 {¶ 9} Pursuant to R.C. 2905.02,
(A) No person, without privilege to do so, shall knowingly doany of the following:
* * *
(2) By force or threat, restrain the liberty of anotherperson, under circumstances which create a risk of physical harmto the victim, or place the other person in fear * * *.
In addition, R.C. 2911.01 provides:
(A) No person, in attempting or committing a theft offense,* * * shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person orunder the offender's control and either display the weapon,brandish it, indicate that the offender possesses it, or use it.
 {¶ 10} When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In contrast, in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial and determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
 {¶ 11} In this case, the jury heard testimony from Logan Fischer, Robert Miller, Chris Taylor, Detective Jeff Stiers, and Lance Grimes. Logan Fischer, Robert Miller, Chris Taylor and Detective Jeff Stiers provided testimony in the State's case in chief regarding the events that took place on February 16, 2005.
 {¶ 12} The State's witnesses, Logan and Robert, provided testimony with respect to the elements of the counts of Abduction and Aggravated Robbery. They both testified that on February 16, 2005 while in the Mudgett's driveway they felt as though they were restrained to the area and were not free to leave because Lance had a gun and was threatening to shoot them. The threat of the gun did make Robert afraid that Lance was going to shoot him. Furthermore, they testified that Lance did a pat down on them and took their money and marijuana while he had the gun pointed at them or in his hand.
 {¶ 13} Lance, in his own defense testified as to the events of February 15, 2005. He admitted that there was a gun at Michelle's house that was black in color, was made of strong plastic, and had a clip and yellow plastic bullets. However, he testified that he and Chris had shot the gun at a target while Logan and Robert were there. But, they did not take the gun when they left to take Logan and Robert to the Mudgett's house; rather, the gun had stayed on the table in Michelle's house. Lance further testified that he did not place his hands on Logan to do a pat down or ask him to empty his pockets but merely asked him if he had the water bong. He then said that he asked Robert the same question; but did not physically restraining either Logan or Robert. Lance did admit that Logan and Robert gave him all of their money which he gave to Chris for gas money.
 {¶ 14} In sum, in reviewing the totality of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we can say that a rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.
 {¶ 15} Grimes asserts in his third assignment of error that the trial court violated his right to a jury trial and his due process rights by sentencing him to a three year sentence for each firearm specification. Specifically, Lance claims that the jury's verdict including the firearm specifications was based on language of R.C. 2929.14(D)(1)(a)(iii) providing a mandatory sentence of one year; rather than on R.C. 2929.14(D)(1)(a)(ii) providing a mandatory sentence of three years. Therefore, Lance states that due to the mistaken application of the incorrect statute, his sentence should be reduced to reflect the crime for which he was convicted.
 {¶ 16} R.C. 2929.14 provides that,
(D)(1)(a) Except as provided in division (D)(1)(e) of thissection, if an offender who is convicted of or pleads guilty to afelony also is convicted of or pleads guilty to a specificationof the type described in section 2941.141, 2941.144, or 2941.145of the Revised Code, the court shall impose on the offender oneof the following prison terms:
* * *
(ii) A prison term of three years if the specification is ofthe type described in section 2941.145 of the Revised Code thatcharges the offender with having a firearm on or about theoffender's person or under the offender's control whilecommitting the offense and displaying the firearm, brandishingthe firearm, indicating that the offender possessed the firearm,or using it to facilitate the offense;
 (iii) A prison term of one year if the specification is of thetype described in section 2941.141 of the Revised Code thatcharges the offender with having a firearm on or about theoffender's person or under the offender's control whilecommitting the felony.
 {¶ 17} The State concedes that the verdict form provided to the jury was not reviewed by counsel and only contained in pertinent part the following:
that Lance E. Grimes had a firearm on or about his person orunder his control while committing the offense
thus, omitting the language:
and displayed the firearm, brandished the firearm, indicatedthat the offender possess the firearm or used it to facilitatethe offense.
After the verdict had been rendered, the jury was discharged. Once a jury has been discharged, the verdict form cannot be amended or altered to correct an error. Sargent v. State
(1842), 11 Ohio 472.
 {¶ 18} In addition, the Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing inState v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856. InFoster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework are unconstitutional. However, R.C.2929.14(D)(1) was not held to be unconstitutional. Therefore,Foster does not apply to this case.
 {¶ 19} Accordingly, Grimes' third assignment of error is sustained to the extent of the one year versus three year sentencing of the firearm specification.
 {¶ 20} In Grimes' second assignment of error, he claims that he was denied due process of law because he did not receive effective assistance of counsel. He states that numerous mistakes were made and his counsel failed to object to improper evidence. Specifically, he claims that his counsel did not have a charging document to serve as a clear basis as to what the charges were and who the alleged victims were, did not call a witness that was at the scene who could have provided testimony regarding the gun, did not properly assert Crim.R. 16(B)(1)(g), should have cross-examined witnesses more thoroughly, failed to object throughout the case, and never made a Rule 29 motion.
 {¶ 21} In order to prevail on a claim of ineffective assistance of counsel, Grimes must establish both of the following:
1. Trial counsel made errors so serious he was no longerfunctioning as counsel in the manner guaranteed by the SixthAmendment; and
 2. There is the reasonable probability that were it not fortrial counsel's errors, the results of the trial would have beendifferent. See Strickland v. Washington (1984), 466 U.S. 668,104 S. Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Thus, under this standard, Grimes must show that his counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance. Bradley, 42 Ohio St. 3d at 142.
 {¶ 22} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), Montgomery App. No. 10564. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it." Id. quoting Smith v. Murray (1986),477 U.S. 527, 535, 106 S.Ct. 2661.
 {¶ 23} Trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v.Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643, certiorari denied (1996), 517 U.S. 1213, 116 S.Ct. 1835,134 L.Ed.2d 938. Furthermore, trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel. State v. Lockett
(1976), 49 Ohio St.2d 48, 358 N.E.2d 1062, paragraph nine of the syllabus.
 {¶ 24} In this case, Grimes' counsel was not ineffective pursuant to the assertions regarding the charging document and Crim.R. 16(B)(1)(g). As to the lack of a charging document, Grimes' counsel was provided with an Indictment which was filed on March 4, 2005 and a Bill of Particulars which was filed on March 21, 2005. Seeing that Grimes' counsel did receive these documents, there is no error and no claim for ineffective assistance of counsel. As to Crim.R. 16(B)(1)(g) not being properly asserted, Grimes' counsel did properly assert Crim.R. 16(B)(1)(g). Crim.R. 16(B)(1)(g) states:
Upon completion of a witness' direct examination at trial, thecourt on motion of the defendant shall conduct an in camerainspection of the witness' written or recorded statement with thedefense attorney and prosecuting attorney present andparticipating, to determine the existence of inconsistencies, ifany, between the testimony of such witness and the priorstatement.
 If the court determines that inconsistencies exist,, thestatement shall be given to the defense attorney for use incross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist thestatement shall not be given to the defense attorney and he shallnot be permitted to cross-examine or comment thereon. * * *
Even though Grimes' counsel did not formally participate in the examination of the statements; he did receive the statements of the witnesses to use in cross-examination. Therefore, even if error could be found in the review of the statements, it is harmless because Grimes' counsel did ultimately receive and use the statements of the witnesses in cross-examination. Accordingly, pursuant to these two assertions by Grimes, his counsel was not ineffective.
 {¶ 25} The remaining assertions are trial or strategic tactics made by Grimes' counsel. Specifically, the fact that Grimes' counsel did not object to a witness' testimony appears to be a strategic trial decision made by his counsel because the witness may have appeared to be an uncooperative and evasive witness. In addition, the fact that Grimes' counsel did not further cross-examine certain witnesses appears to be a strategic trial decision made by his counsel because further questioning may not have provided any new information or may have provided unnecessary information to this case.
 {¶ 26} Therefore, upon review of this case, it is our conclusion that the evidence in this case regarding the remaining assertions of ineffective assistance of counsel revealed tactical or strategic trial decisions. As such, they do not fall below an objective standard of reasonable representation. Nor, in this case, did they create any reasonable probability of a different outcome. Moreover, tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel. State v. Garrett (1991),76 Ohio App.3d 57, 61. Thus, Grimes' second assignment of error is overruled.
 {¶ 27} Accordingly, Grimes' first and second assignments of error are overruled and the third assignment of error is sustained to the extent of the one year versus three year sentencing of the firearm specification. The sentence is vacated in part and this case should be remanded for resentencing only as to the firearm specification.
Judgment Affirmed in Part, Reversed in Part and CauseRemanded.
 Rogers and Cupp, J.J., concur.